## GEDDIS v. NORTHWESTERN TRUST CO. OF OMAHA, NEBRASKA, et al.

A mortgage securing a number of notes was assigned by the mortgagee to a trust company, which had an arrangement with the mortgagor in the nature of a building and loan contract. The mortgagee retained a number of the notes, which he turned over to the trust company as fast as it paid him the money therefor. The trust company defaulted on its agreement with the mortgagor, and was subsequently dissolved. **Held,** that the grantee of the mortgagor having benefited by the deduction of the amount of the mortgage from the purchase price, could not quiet title against the mortgage, on payment merely of the notes still held by the mortgagee, but must also pay into court, for whoever might be entitled to the assets of the trust company, what it had paid the mortgagee above the amount received from the mortgagor; it being immaterial that the trust company had defaulted on its contract with the mortgagor, or whether the assignment of the mortgage passed to the trust company the title to the notes or not.

Marking the notes "Paid," as they were turned over to the trust company, created no estoppel to claim that the word "Paid," meant only that the notes had been taken up in accordance with the agreement with the mortgagee.

The property of a corporation does not escheat or revert to the grantor upon its dissolution, so that debts due a corporation would not be extinguished, but would go to the person legally entitled to its property.

(Opinion filed, Sept. 4, 1909.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by John B. Geddis against the Northwestern Trust Company of Omaha, Neb., and others, in which Alexander Buchanan intervened. From a judgment for intervener, and an order denying a new trial, plaintiff appeals. Affirmed.

A. W. Wilmarth, for appellant.

The debts to·or from a corporation are extinguished by its dissolution ·as there is no person in whose favor·or against whom they can be enforced or no one·in law to sue or to be sued. ·Commercial Bank of Naches v. Chambers, 16 Miss. 9; Commercial Bank v. Lockwood (Del.) 2 ·Har. 8; Hightower v. Thornton, 8 Geo. 486, 952 Am. Dec. 512; Moultrie v. Smiley, 16 Ga. 289; Bank of Miss. v. Wren, 11 ·Miss. 791; Merrill v Suffolk, State Bank, 31 Me. 57; Hunt v. Columbia Ins. Co., 55 Me. 290.

*Henry C. Hinkley* and *W. A. Lynch,* for respondent Buchanan.

The property of a corporation does not escheat or revert to the grantor thereof upon its dissolution, so that debts due a corporation would not be extinguished, but would go to the persons legally entitled to its property. Thompson on Corp., Sec. 620; Wilson v. Leary, 120 N. C. 90; Kent Com. 307.

CORSON, J. This is an action by the plaintiff to quiet title to two certain lots in the city of Huron, of which he claims to be the ,owner, and alleges in 'his complaint in substance that the Woman's Relief Corps, a Dakota corporation, was the former owner of the property, ·and while such owner mortgaged the same to the defendant Miner to secure certain notes executed by the said ʌWoman's Relief Corps for the ·sum of $1,200; that, subsequently to the execution of said mortgage by the said Relief Corps, that corporation conveyed the property to the plaintiff; that ·all of said mortgage has been paid, except the sum of $250 and interest thereón, which is due to the original mortgagee, Miner; that Miner transferred the said mortgage and notes to the Northwestern Trust Company, a Nebraska corporation ; that the said trust company was dissolved by a judgment of the court of Nebraska, and that no successor, assignee, or trustee had been appointed by that court to wind up the affairs of said corporation; ·and the plaintiff demanded judgment that, upon the payment of $250 and interest due and unpaid, the said Relief Corps notes and ·mortgage be canceled by judgment of ·the court. Neither the Northwestern Trust Company nor Philip Lawrence, trustee, of said company in the purchase of the Miner mortgage, answered or appeared in the action. Before the trial, however, one Alexander Buchanan, who claimed

to be the owner of all the stock of the Northwestern Trust Company, by leave of court filed a complaint in intervention, alleging in substance that the said Trust Company of Nebraska had been dissolved and no trustee or assignee appointed by the court; that the company had become the assignee of the said Miner mortgage, and had paid a large amount thereon, to which he was entitled as such sole stockholder to be reimbursed by the plaintiff—he, the plaintiff, having purchased said property subject to the said mortgage.

The court found the facts substantially as set out in Buchanan's complaint of intervention, and made conclusions of law and entered a judgment in favor of the claim of said Buchanan to the extent of $454.54, which the court adjudged should be paid to the clerk of courts by the plaintiff, in addition to the sum of about $350, including interest, the balance due Miner on account of said mortgage. From this judgment, and order denying a new trial, the plaintiff has appealed, assigning as the principal error that the court erred in its conclusions of law and judgment requiring the plaintiff to deposit with the clerk of courts the $454.54 above specified, before being entitled to the cancellation of the said mortgage; and this is substantially the only question involved in this case and that will be considered in this opinion.

In order to more clearly comprehend the question involved, the material findings of the court will be given in substance: That the Woman's Relief Corps, a corporation organized under the laws of the state of South Dakota, purchased the property in controversy, and gave a mortgage upon the same for $1,200 to the defendant William L. Miner to secure 12 notes, of $100 each, which mortgage and notes bear date of April 13, 1903; that on the 1st day of August, 1903, the said Miner sold, assigned, and delivered the said mortgage to Philip Lawrence, as trustee for the Northwestern Trust Company, and that said Miner at the time retained the notes, secured by said mortgage, which had not been paid by the Woman's Relief Corps; that subsequent to the execution and delivery of the said mortgage the Woman's Relief Corps sold and transferred the said property to the plaintiff on November 29, 1905, subject to said mortgage; that after said assignment of said mort-

gage the Northwestern Trust Company paid eight of said notes, of $100 each, to the defendant William L. Miner, together with interest thereon, amounting to the total sum of $832.03, and at the time of said payments the said Miner delivered said notes to Philip Lawrence, trustee of the said Northwestern Trust Company, and these notes upon their face were each marked "Paid"; that the said Woman's Relief Corps paid one of the said $100 notes and interest and $50 on another note, with interest, July 15, 1904; that the said Miner still retains three notes, on one of which there has been $50 paid, with interest to July 15, 1904. The court then proceeds to find the facts relating to the transaction between the Northwestern Trust Company and the Woman's Relief Corps, which in the view we take of the case will not be necessary to be reproduced in this opinion, further than to say that the contract is in the usual form of contracts of building and loan associations, and provided for a loan to the Woman's Relief Corps of $2,000, bearing date April 13, 1903.

The court further finds that on the said contract the Woman's Relief Corps paid the said trust company the sum of $257, $230 of which should apply on the amount paid by the corporation, and which amount seems to have been deducted from the amount paid by the trust company on account of said notes and mortgage. The court further finds that the trust company defaulted, and did not comply with the terms of its contract with the Woman's Relief Corps, and that the Woman's Relief Corps at all times complied with the terms of its contract on its part, and made payments after said default by the Northwestern Trust Company, and has been ready and willing at all times, and still is ready and willing, to continue the payments and comply with the terms of its contract; that the charter of the defendant Northwestern Trust Company has been dissolved by a competent court in the state of Nebraska, and no successor, assignee, or trustee appointed by that court to wind up the affairs of the company. The court further finds the amount due the said Miner on the notes retained by him, and concludes that Miner is entitled to the payment of said sum, and also that the plaintiff should be required to pay to the clerk of courts $474.54, and that upon such payment the mortgage should be canceled and plaintiff's title quieted.

The plaintiff contends that: "The court erred in its conclusions of law and in its decree by directing the plaintiff and appellant to pay the clerk of courts for the successors of the Northwestern Trust Company the said sum of $474.54, on the ground (1) that the Northwestern Trust Co. defaulted and failed to comply with its contract set out in the twelfth finding of fact, by failing to pay the money therein agreed to be paid to the Woman's Relief Corps; (2) that the assignment of the William L. Miner mortgage to the Northwestern Trust Company did not carry with it the notes which it was given to secure, and which were retained by W. L. Miner until paid, and when paid were so marked upon their face, and thereby the assignment of said mortgage gave the said company no lien on the property of the Woman's Relief Corps; (3) that the charter of the Northwestern Trust Company has been dissolved, annulled, and terminated by a decree of the Supreme Court of Nebraska, where said corporation was organized, without providing in said decree for a receiver or any successor to the interests of the Northwestern Trust Company."

We are of the opinion that the court was right, and that its decree requiring the amount of $474.54 deposited with the clerk was clearly correct. Either the stockholders of the corporation, or the creditors of the corporation, are entitled to be reimbursed by the plaintiff the money paid by that corporation on account of the Miner mortgage in excess of the amount it had received from the Woman's Relief Corps, and that it was the duty of the court as a court of equity to require such payment to be made to the clerk for the benfit of the parties entitled thereto, without determining in his action who those parties in fact were. The court in its findings found very fully the facts relating to the transaction between the Woman's Relief Corps and the trust company; but in the view we take of the case this transaction was not material in this case except so far as it enabled the court to determine the amount that had been paid by the trust company in excess of the amount that it had received from the Woman's Relief Corps, and that the case is to be treated precisely as though the trust company had paid for the benefit of the plaintiff the sum of $454.54, and which it became the duty of the plaintiff to refund to that company, before the

plaintiff would be entitled to a cancellation of the mortgage, and that the question of whether or not the trust company had fully complied with its agreement with the Relief Corps was immaterial in this case. And in our opinion it is not material whether the assignment of the mortgage made by Miner to the trust company, or to Lawrence, its trustee, carried with it the title to the notes or not; for its right to reimburse does not depend upon the question of whether it acquired title to the notes or not, but to the fact that the trust company advanced the money in payment of these notes, which in equity ought to be refunded to it, or to the parties entitled to it as successors of the trust company. In other words, the plaintiff having purchased the property subject to this mortgage, presumptively the amount of this mortgage had been deducted from the purchase price, and clearly, therefore, the trust company having paid the $454.54 on account of the mortgage, equity would compel the plaintiff to refund that sum before being entitled to a cancellation of the mortgage. Had Miner retained the notes and mortgage, it would not, we apprehend, be claimed that the plaintiff would be entitled to a cancellation of the mortgage until the amount due on the same had been paid to Miner. Clearly, the trust company, by taking an assignment of the mortgage and paying the amount found to have been paid by it on the said notes and mortgage, became subrogated to Miner's rights as to payment of the same, and in our view of the case the marking of the notes paid as they were taken up from time to time by the trust company does not estop it from claiming that the word "Paid" was simply intended to mean that it had taken up the notes in accordance with its agreement with Miner.

The further contention of the appellants, that "the debts of a corporation, either due to or from it, are totally extinguished by its dissolution," though in early times held as law, has by the modern cases been abrogated and overruled. In the case of Wilson v. Leary, 120 N. C. 90, 26 S. E. 630, 38 L. R. A. 240, the question as to the effect of the dissolution of a corporation is so fully considered and discussed that we feel justified in quoting quite largely from the decision. In that case the learned court says: "It is true it was held in an opinion by Gaston, J., in Fox v. Horan, 36 N. C.

358, 36 Am. Dec. 48, that by the common law, upon the dissolution of a corporation by the expiration of its charter or otherwise, its real property reverted to the, grantor, its personal property escheated to the state, and its choses in action became extinct, and hence that, on the expiration of the charter of a bank, a court of equity would enjoin the collection of notes made payable to the bank or its cashier; the debtors being absolved by the dissolution. Judge Thompson (5 Thomp. Corp. § 6720) refers to this decision 'in accordance with the barbarous rule of the common law' as 'probably the last case of its kind,' and notes that it has since been, in effect, overruled in Von Glahn v. De Rosset, 81 N. C. 467, and it is now expressly overruled by us. Chancellor Kent (2 Kent, Com. 307, note), says: 'This rule of the common law has, in fact, become obsolete and odious.' And elsewhere he stoutly denied that it had ever been the rule of the common law, except as to a re·strictd class of corporations. 5 Thomp. Corp. § 6730. The subject is thoroughly discussed by Gray on Perpetuities, §§ 44-51, and he demonstrates that my Lord Coke's doctrine rested on the dictum of a fifteenth century judge (Mr. Justice Coke, in the Prior of Spaulding's Case [1467] 7 Edw. IV. 10-12), and is contrary to the only case deciding the point (Johnson v. Norway [1622] Winch. 37), though Coke's statement has often been referred to as law. But, whatever the extent of this rule at common law, if it was the rule at all, it was not founded upon justice and reason, nor could it be approved by experience, and has been repudiated by modern courts. The modern doctrine is, as held by us, that 'upon dissolution the title to real property does not revert to the original grantors or their heirs, and the personal property does not escheat to the state.' 5 Thomp. Corp. § 6746; Owen v. Smith, 31 Barb. (N. Y.) 641; Towar v. Hale, 46 Barb. (N. Y.) 361. The crude conceptions of corporations naturally entertained in a feudal and semi-barbarous age, when they were few in number and insignificant in value and functions, by even so able a man as Sir Edward Coke, and the fanciful reason given by him (Co. Litt. 136) for the reverter of their real estate, to wit, that a. conveyance to them must necessarily be a qualified or base fee, have long since become outworn and discredited. That which is termed 'the common law' is

simply the 'right reason of the thing' in matters as to which there is no statutory enactment. When it is misconceived, and wrongly declared, the common rule is equally subject to be overruled, whether it is an ancient or recent decision."

In a note to this case in 38 L. R. A. 240, it is said: "The above case, by overruling an early decision of the same court as based on an unjust rule of the common law, probably marks the final disappearance from the courts of that now 'obsolete and odious' rule." In view of this decision and the note to the same, we do not deem it necessary to cite further authorities.

The judgment of the circuit court, and order denying a new trial, are affirmed.

WHITING, J., taking no part in this decision.